United States District Court

For the Northern District of California

1

2          "

3

4

5                         UNITED STATES DISTRICT COURT

6                       NORTHERN DISTRICT OF CALIFORNIA

7

8    COMUNITY COLLECTORS LLC, *et al.*,        No. C-11-4777 EMC

9                  Plaintiffs,
                                              **RELATED TO**
10          v.

11   MORTGAGE ELECTRONIC                       No. C-12-0771 EMC
     REGISTRATION SERVICES, INC., *et al.*,
12
                  Defendants.
13   _____/

14   COMUNITY COLLECTORS LLC, *et al.*,        **ORDER GRANTING DEFENDANT
                                              OSEBERG'S MOTION TO DISMISS
15                 Plaintiffs,                 FOR LACK OF SUBJECT MATTER
                                              JURISDICTION**
16          v.
                                              **(Docket Nos. 55, 59, 62, 64, 66, 73, 111)**
17   THE BANK OF NEW YORK, *et al.*,

18                 Defendants.
     _____/
19

20                        I.   **INTRODUCTION**

21          Plaintiffs ComUnity Collectors LLC ("Collectors"), Gwendolynn J. Tyler 2006 Living Trust

22   ("GTrust"), and Darryl Fry have filed suit against Defendants Mortgage Electronic Registration

23   Services ("MERS"), Terwin Advisors L.L.C. ("Terwin Advisors" or "Winter Group"), Dewey &

24   LeBoeuf L.L.P. ("Dewey"), Christopher DiAngelo, Roxana Bargoz, The Bank of New York Mellon

25   ("BNYM" or "Bank of New York"), Wilmington Trust Company ("Wilmington"), Specialized Loan

26   Servicing L.L.C. ("SLS"), Deutsche Bank AG, and Oseberg Asset Management LLC ("Oseberg").

27   Compl., Docket No. 1.  Plaintiffs allege causes of action for fraud, breach of fiduciary duty,

28   conspiracy, and breach of the bankruptcy automatic stay against Defendants, arising out of a

United States District Court
For the Northern District of California

1  disputed transaction between the parties to create a mortgage asset-backed security called the

2  Terwin Micro Asset-Backed Security, Series 2007 ComUnity1 ("Security" or "Micro 1").  Compl. ¶

3  2.  Pending before the Court are Defendants' motions to dismiss.[1]

4       After considering the parties' submissions and oral argument, and for the reasons set forth

5  below, the Court **GRANTS** Defendant Oseberg's motion to dismiss for lack of subject matter

6  jurisdiction.  Because the Court lacks jurisdiction, it may not exercise supplemental jurisdiction to

7  consider the merits of any additional motions by Defendants concerning Plaintiffs' state law claims.

8  *Herman Family Revocable Trust v. Teddy Bear*, 254 F.3d 802, 806 (9th Cir. 2001).  In addition,

9  because Plaintiff concedes that his second-filed related action, *ComUnity v. Bank of New York*, C-

10  12-771 EMC, is merely a duplicate of the first-filed action, *see* No. 12-771 EMC, Docket No. 13, at

11  3, the Court **DISMISSES** that action for lack of subject matter jurisdiction as well.  *Adams v.*

12  *California Dept. of Health Services*, 487 F.3d 684, 688 (9th Cir. 2007) ("[T]he district court may

13  exercise its discretion to dismiss a duplicative later-filed action, to stay that action pending

14  resolution of the previously filed action, to enjoin the parties from proceeding with it, or to

15  consolidate both actions.").

16                    **II.    FACTUAL AND PROCEDURAL BACKGROUND**

17       In the Complaint, Plaintiffs allege as follows.  Plaintiff Darryl Fry is a prepetition creditor for

18  ComUnity Lending, Inc. ("CLI"), and CLI's sole shareholder.  Compl. ¶ 1.  CLI was a mortgage

19  lender and bank, which was in the business of originating mortgage loans and then selling them to

20  investors.  *Id.* ¶¶ 14-15.  CLI did not hold the mortgages and service them; rather, it funded and sold

21  them.  *Id.* ¶ 15.  CLI declared bankruptcy on January 4, 2008.  *Id.* ¶ 26.  Plaintiff Collectors is the

22  successor in interest to CLI pursuant to a bankruptcy trustee sale assigning CLI's interests related to

23  the Micro 1 Security.  *Id.* ¶ 2.  Plaintiff GTrust is a living trust which purchased a Class B-1 interest

24  in the Micro 1 Security for $1.25 million.  *Id.* ¶ 19.

25  ───────────────

26       [1]  Multiple Defendants filed motions to dismiss in this action under various legal theories,
    including lack of subject matter jurisdiction, lack of personal jurisdiction, and failure to state a claim

27  upon which relief can be granted.  *See* Docket Nos. 55, 59, 62, 64, 66, 73; *see also ComUnity v.*
    *Bank of New York*, C-12-771 EMC, Docket No. 8.  Because the Court concludes that it lacks subject

28  matter jurisdiction over these actions, it is without power to consider Defendants' motions as to any
    issue not incorporated into the above jurisdictional analysis.

<div style="float:left">**United States District Court**
For the Northern District of California</div>

1    In the fall of 2007, CLI began negotiations to create the Micro 1 Security with

2  Terwin/Winter Group.[2]  *Id.* ¶ 18.  The Security was to be offered to investors containing 144

3  mortgages owned by CLI, and Winter Group was to have a repurchase option to buy the mortgages

4  at a later date for 90% of their face value.  *Id.* ¶¶ 18, 21.  CLI contributed the mortgages in exchange

5  for a Class B-2 interest, Defendant Oseberg contributed $8.5 million for the senior Class A interest,

6  and Plaintiff GTrust contributed $1.25 million for the mezzanine Class B-1 interest.  *Id.* ¶ 19.

7  Oseberg and GTrust's contributions were to be used to pay off the debt on the CLI mortgages owed

8  to other lenders.  *Id.*  The closing date was set for September 27, 2007.  *Id.* ¶ 20.

9    CLI and GTrust contributed their signature pages, mortgages, and $1.25 million as of the

10  closing date.  *Id.* ¶¶ 19-22. Defendant Oseberg also contributed its share of the money by the closing

11  date.  *Id.* ¶ 19.  CLI, GTrust, and Oseberg received their certificates of security from the Dewey

12  Team[3] in exchange on September 28, 2008.  *Id.* ¶ 40.  GTrust received regular reports and payments

13  for at least some period of time from BNYM, purportedly in its capacity as Administrator of the

14  Micro 1 Security.  *Id.* ¶¶ 42, 47, Ex. 1 (listing BNYM as Security Administrator); *see also* Docket

15  No. 89, Ex. 6 (Trust Agreement) (listing BNYM as Master Servicer, Backup Servicer, and Securities

16  Administrator).

17    However, Plaintiffs allege that Micro 1 never closed and the contract never formed.  Instead,

18  Plaintiffs allege that after sending in their assets and signature pages, the Winter Group attempted to

19  unilaterally modify the contract to provide for a repurchase price of 72.06%, instead of the agreed-

20  upon 90%.  *Id.* ¶ 22.  The Winter Group further attempted to change the contract on December 26,

21  2007, to 27.94%.  *Id.*  The Dewey Team allegedly aided the Winter Group in these attempted

22  unilateral changes by incorporating them into the contract documents and attaching signature pages

23  to those documents on January 22, 2008.  *Id.*  Plaintiffs construe these attempted changes as counter-

24  offers, to which CLI and GTrust never assented.  *Id.*  Thus, Plaintiffs allege these attempted changes

25  killed the contract formation process.  *Id.*

26    _____

    [2]  Plaintiffs include SLS within the Winter Group, because they allege that SLS was a Winter

27  Group entity.  Compl. ¶¶ 11, 17.

28    [3]  Dewey Team refers to Dewey and the attorney-defendants in this action who were
    attorneys at Dewey during the time in question, DiAngelo and Bargoz.

**United States District Court**
For the Northern District of California

1    Plaintiffs further allege that Defendants fraudulently conducted themselves as if the contract

2  had formed, even though it had not.  They allege that Defendants Winter Group and Dewey created

3  a fraudulent closing date of January 22, 2008, on which they created false closing binders which

4  attached signature pages to the altered contract and mis-represented that it had closed on September

5  27, 2007. *Id.* ¶¶ 22-23.  They claim that all Defendants except MERS participated in this fraudulent

6  closing date and received the fraudulent closing binders. *Id.* ¶¶ 28, 32.  Each of these Defendants

7  besides MERS has allegedly misrepresented to Plaintiffs that a contract had formed. *Id.* ¶ 41.

8    In April 2008, Defendants Winter Group and Dewey Team attempted to exercise their

9  fraudulent repurchase price through the Winter Group's purported entity SLS. *Id.* ¶¶ 25, 28, 30.

10  BNYM sent a Notice of Termination of the Trust on April 15, 2008, informing Plaintiffs that SLS

11  would exercise the repurchase option on April 25, 2008. *Id.* ¶ 31, Ex. 1.  CLI's bankruptcy counsel

12  immediately protested and sent an April 23, 2008 letter to Defendants Dewey, BNYM, and SLS,

13  with a Notice of Automatic Stay pursuant to CLI's pending bankruptcy petition. *Id*. Ex. 3.  In the

14  letter, CLI's counsel disputed the repurchase price and stated that CLI had never agreed to anything

15  except a 90% price. *Id.*  It stated that any changes were unilateral and unapproved by CLI. *Id*. at 1-

16  2.

17    On April 24, 2008, the Trustee revoked the Notice of Termination. *Id*. Ex. 4.  No repurchase

18  option was ever executed by any Defendant or other party. *Id*. ¶¶ 35, 45 (describing repurchase as

19  "attempted").  Thereafter, Plaintiffs allege that the Winter Group, MERS, the Dewey Team, and SLS

20  worked together to liquidate and "waste" the mortgage assets via foreclosing on 132 of the 144

21  mortgages. *Id*. ¶¶ 35, 60-61.  Because the contract never formed, according to Plaintiffs, those

22  mortgages remained assets of CLI and the bankruptcy estate. *Id*. ¶ 57.  In addition, BNYM has

23  never returned GTrust's $1.25 million, even though it purportedly knows no contract has formed and

24  even though GTrust has demanded its return. *Id*. ¶ 34.

25    As for the remaining Defendants, Defendant Wilmington signed the Micro 1 contracts

26  intending to be a trustee. *Id*. ¶ 48.  Wilmington allegedly never informed CLI or GTrust that the

27  contract never formed, and mismanaged their assets by failing to return them to the rightful owner.

28  *Id*.  Defendant Deutsche engaged in the same conduct and also signed the Micro 1 contracts

4

United States District Court

For the Northern District of California

1  intending to be a trustee.  *Id*. ¶ 49.  Defendant Oseberg failed to forward any assets it received

2  pursuant to its participation in the fraudulent contract to CLI and GTrust.  *Id*. ¶ 50.

3       Based on the above allegations, Plaintiffs assert claims for fraud, breach of fiduciary duty,

4  willful violation of the automatic stay under 11 U.S.C. § 362(k), and conspiracy.   They seek a

5  permanent injunction preventing Defendants from liquidating, distributing, or controlling CLI's

6  mortgage assets and proceeds; an order compelling Defendants SLS, BNYM, MERS, and Oseberg

7  to transfer any remaining mortgage assets and proceeds to Collectors; disgorgement of sums

8  received from participating in the Micro 1 Security; $10 million to Plaintiff Fry in damages for the

9  loss of his company, CLI; $1.25 million to Plaintiff GTrust in damages for her payment into the

10  Security; $17,776,852 to Plaintiff Collectors in lost mortgages; punitive damages; fees and costs.  *Id*.

11  ¶¶ 71-78.  The Bankruptcy Trustee did not pursue any claim for violation of the automatic stay.

## III.   DISCUSSION

13  A.    Automatic Stay - Defendant Dewey

14       Before addressing the parties' motions, the Court must first address Defendant Dewey's

15  Notice of Automatic Stay.  On June 4, 2012, Defendant Dewey filed a Notice of Commencement of

16  Chapter 11 Case and Stay of Actions Pursuant to Section 362 of the Bankruptcy Code.  Docket No.

17  103.  As Dewey's Notice explains, under 11 U.S.C. § 362(a) the automatic stay "prevents all parties

18  from, inter alia, commencing or continuing any pre-petition litigation, taking any action to obtain

19  possession or control over property of the Debtor's estates, or taking any action to enforce or collect

20  a judgment."  Docket No. 103 at 1.  The Court issued an order asking the parties to brief whether,

21  pursuant to the automatic stay, the Court had authority to enter an order adjudicating the parties'

22  motions to dismiss.  Docket No. 105.[4]

23       The Ninth Circuit has established that a district court has jurisdiction to determine whether

24  an automatic stay applies to its proceedings.  *See Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1113 (9th

25  Cir. 2005); *see also Dominic's Rest. of Dayton, Inc. v. Mantia*, 683 F.3d 757, 760 (6th Cir. 2012).

26  Although an automatic stay broadly applies to "the commencement or continuation" of judicial

27            [4] The Court declines to order any additional briefing as requested by Plaintiffs and therefore
**DENIES** their motion for administrative relief.  Mot. for Administrative Relief and for a New

28  Briefing Order, Docket No. 111.

**United States District Court**

For the Northern District of California

1  proceedings, this Court must interpret 11 U.S.C. § 362(a) to ensure that its application will not

2  "produce a result 'demonstrably at odds with the intention of its drafters.'" *See Clark v. Capital*

3  *Credit & Collection Services, Inc.*, 460 F.3d 1162, 1169 (9th Cir. 2006) (citing *In re Been,* 153 F.3d

4  1034, 1036 (9th Cir. 1998)).  That intention has been defined as (1) protecting a debtor from his

5  creditors and alleviating "the financial pressures that drove him into bankruptcy" and (2) protecting

6  creditors to ensure equitable payment of claims from a debtor.  *See Independent Union of Flight*

7  *Attendants v. Pan American World Airways, Inc.*, 966 F.2d 457, 459 (9th Cir. 1992) ("*IUFA*").

8       In *IUFA*, for example, the Ninth Circuit held that where no statutory purpose is served by

9  applying an automatic stay pursuant to 11 U.S.C. § 362(a), a court may properly dismiss the

10  underlying action.  *IUFA*, 966 F.2d at 459 ("[T]he application or non-application of § 362(a) to the

11  dismissal of an action pending against a debtor should be made consistent with the purpose of the

12  statute.").  Thus, in that case, the court determined it could properly dismiss the action based on

13  mootness where IUFA had "withdrawn the grievance which it sought to compel Pan Am [the debtor]

14  to arbitrate by this action."  *Id.* at 458.

15       In *Dean v. Trans World Airlines, Inc.*, 72 F.3d 754, 756-57 (9th Cir. 1995), the Ninth Circuit

16  clarified its holding in *IUFA* and found that dismissal does not violate an automatic stay only if

17  "there was no conceivable way" for the court's consideration of the motion to harm the debtor in the

18  action.  Importantly, the *Dean* court limited *IUFA*'s holding to cases in which not only the *effect* of

19  considering the motion (*e.g.*, dismissing an action against the debtor), but also the *consideration* of

20  the motion, would not involve the merits of the underlying case.  *See id.* at 756 ("[T]he *IUFA*

21  exception must be a narrow one that cannot apply where a decision to dismiss requires a court to

22  first decide any other issues presented by or related to the underlying case.").  Thus, "post-filing

23  dismissal in favor of the bankrupt of an action that falls within the purview of the automatic stay

24  violates the stay where the decision to dismiss first requires the court to consider other issues

25  presented by or related to the underlying case. In other words, thinking about the issues violates the

26  stay."  *Id.*  In *Dean*, the court found that a district court order considering a party's motion to dismiss

27  violated the automatic stay because it "required the court to decide whether the law-of-the-case

28

1  precluded finding TWA liable to Dean" and therefore would require the "court to first decide . . .

2  issues presented by or related to the underlying case." *Id.*

3      In the instant case, while some of Defendants' motions to dismiss would likely run afoul of

4  the automatic stay, here Defendant Oseberg's motion to dismiss demonstrates that the Court lacks

5  subject matter jurisdiction over this action because, *inter alia*, Plaintiffs lack standing to pursue

6  claims under 11 U.S.C. § 362.  Because considering this motion does not implicate the underlying

7  issues or merits of this action, the automatic stay does not apply.  *See Dean*, 72 F.3d at 756-57

8  (motion to dismiss that "merely asked the court to recognize that IUFA no longer wished to litigate .

9  . . did not violate the automatic stay because, at the time of IUFA's motion, it was clear there was no

10  conceivable way for the court's consideration of the motion to harm the bankrupt Pan Am."); *see*

11  *also Lindley Contours, LLC v. AABB Fitness Holdings, Inc.*, 414 F. App'x 62, 63 (9th Cir. 2011)

12  ("[B]ecause we find that subject matter jurisdiction is lacking and do not reach the merits of

13  Appellant's claims, we need not retain jurisdiction over Mr. Cooper pursuant to the automatic stay

14  provision of § 362.") (citing *Dean*, 72 F.3d at 756); *Evans v. Anderson*, C 09-5227 MHP, 2010 WL

15  118398, at *1 (N.D. Cal. Jan. 7, 2010) ("[W]here the district court lacks jurisdiction over the action

16  filed before it the court is not without power to remand the action and the stay does not deprive it of

17  that power.") (citing *County of Cook v. Mellon Stuart Co.*, 812 F. Supp. 793, 798 n. 3 (N.D. Ill.

18  1992)); *MTGLQ Investors, L.P. v. Guire*, 286 F. Supp. 2d 561, 563-64 (D. Md. 2003) ("[D]ismissing

19  or transferring the case on jurisdictional grounds does not constitute a prohibited 'continuation' of

20  the action under § 362.") (collecting district court cases outside the Ninth Circuit).

21  B.    Jurisdiction

22      First, Defendant Oseberg argues that this Court lacks jurisdiction over this action and

23  requests dismissal under Federal Rule of Civil Procedure 12(b)(1).  Defendant argues that diversity

24  jurisdiction is lacking and that the Court lacks federal question jurisdiction over their only federal

25  claim under the Bankruptcy Code because there is no private right of action outside of the

26  Bankruptcy Court, and because Plaintiffs lack standing under the statute.

27  ///

28  ///

7

1          1.          Legal Standard

2          A motion to dismiss is proper under Rule 12(b)(1) when the Complaint fails to allege

3    grounds for federal subject matter jurisdiction or a plaintiff lacks standing to bring a claim. *Warren*

4    *v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003). Although the defendant may

5    be the moving party on a 12(b)(1) motion, "plaintiff bears the burden of establishing federal subject

6    matter jurisdiction." CAL. PRAC. GUIDE: FED. CIV. PROC. BEFORE TRIAL, ¶ 9:77.10 (The

7    Rutter Group 2011) (hereinafter "Rutter"). "Because standing and ripeness pertain to federal courts'

8    subject matter jurisdiction, they are properly raised in a [Federal] Rule [of Civil Procedure] 12(b)(1)

9    motion to dismiss." *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1121–22 (9th Cir.

10   2010).

11         2.          Diversity Jurisdiction

12         Defendant Oseberg argues that there is no diversity jurisdiction because Plaintiffs and

13   Defendant Dewey are both citizens of California. Docket No. 59 at 7; *Schnabel v. Lui*, 302 F.3d

14   1023, 1030 (9th Cir. 2002) ("[A] partnership is a citizen of every state of which its partners are

15   citizens.") (citing *Carden v. Arkoma Assocs.*, 494 U.S. 185, 195 (1990)). Plaintiffs do not respond

16   to these arguments, and do not contest the assertion that diversity jurisdiction is not present.

17   Therefore, the Court cannot rely on diversity jurisdiction.

18         3.          Federal Question Jurisdiction

19         The only basis for federal question jurisdiction is Plaintiffs' claim that Defendants violated

20   the automatic stay imposed by CLI's bankruptcy proceeding. 11 U.S.C. § 362(k) ("[A]n individual

21   injured by any willful violation of a stay provided by this section shall recover actual damages,

22   including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive

23   damages."). Defendants raise a number of challenges to this claim: (1) the need for Plaintiffs to

24   bring the claim in bankruptcy court rather than federal district court; (2) lack of standing; and (3)

25   failure to state a claim. Pursuant to *Dean*, this Court may not consider the third argument as to

26   Plaintiffs' failure to state a claim under § 362 because to do so would "require[] the court to first

27   consider other issues presented by or related to the underlying case," including whether a contract

28

United States District Court
For the Northern District of California

8

United States District Court

For the Northern District of California

1  formed between the parties, including Defendant Dewey.[5]  *Dean*, 72 F.3d at 755; *see also Lewis v.*

2  *Russell*, CIV.S-03-2646WBSKJM, 2009 WL 1260290, at \*2 (E.D. Cal. May 7, 2009) (staying action

3  as against all defendants where "[b]ecause of the nature of the claims . . . it is not possible to draw a

4  meaningful distinction between claims asserted against the Suhs and all other claims").  However,

5  Defendant's first two arguments are sufficient to convince the Court that it lacks subject matter

6  jurisdiction.

7                          a.          Ability to Bring Claim in Federal District Court

8          First, Defendants argue in the alternative that this claim cannot be brought outside of

9  bankruptcy court.  Specifically, Defendant Oseberg argues that there is no private right of action

10 outside the bankruptcy court to pursue a claim for violation of the automatic stay.  One district court

11 has held, "While § 362(h)[6] arguably creates private right of action for willful violation of automatic

12 stay, [citation], 11 U.S.C. §§ 362 does not create a private cause of action outside of the Bankruptcy

13 Court for violations of automatic stay.  [Citation].") (citing *Pettitt v. Baker*, 876 F.2d 456 (5th

14 Cir.1989); *Dashner v. Cate*, 65 B.R. 492 (N.D. Iowa. 1986)).  *Scott v. Wells Fargo Home Mortg.*

15 *Inc.*, 326 F. Supp. 2d 709, 719 (E.D. Va. 2003) *aff'd sub nom. Scott v. Wells Fargo & Co.*, 67 F.

16 App'x 238 (4th Cir. 2003).  The Ninth Circuit similarly held in *MSR Exploration, Ltd. v. Meridian*

17 *Oil, Inc.* that a plaintiff's state law claims for violation of the automatic stay were entirely preempted

18 by the Bankruptcy Code and were thus federal claims, but that such claims must be brought in the

19 bankruptcy court.  74 F.3d 910, 916 (9th Cir. 1996).  The court noted, "MSR's malicious

20 prosecution action against the Producers is completely preempted by the structure and purpose of the

21 Bankruptcy Code.  Therefore, MSR's purported action must, in fact, be a federal claim.  That claim,

22 however, should have been brought in the bankruptcy court itself, and not as a separate action in the

23 district court.  Thus, the district court properly determined that it lacked *jurisdiction* to hear the

24
_____

25      [5] Although Dewey had argued in its motion to dismiss that Plaintiffs did not assert their
automatic stay claim against Dewey, *see* Docket No. 66 at 1 n.3, Plaintiffs' opposition makes it clear
26 that they intended to assert said claim against Dewey, *see* Docket No. 85 at 11.  Thus, considering
whether Plaintiffs have failed to state a claim under § 362 would implicate facts and claims related
27 to Dewey.

28      [6] Section 362(k) was formerly § 362(h).  Therefore, a number of cases cited below refer to
362(h), but the substantive provision is the same as that at issue in the instant case.

matter." *Id.* (emphasis added).  *See E. Equip. & Services Corp. v. Factory Point Nat. Bank, Bennington*, 236 F.3d 117, 121 (2d Cir. 2001) ("[Plaintiffs] assert that it also stated a federal claim under 11 U.S.C. § 362(h), which allows for the recovery of compensatory and punitive damages for willful violations of the automatic stay.  However, again, such a claim *must* be brought in the bankruptcy court, rather than in the district court, which only has appellate jurisdiction over bankruptcy cases.") (emphasis in original) (citing *In re Crysen/Montenay Energy Co.*, 902 F.2d 1098, 1104 (2d Cir.1990); *MSR Exploration*, 74 F.3d at 916).

However, the Seventh and Eleventh Circuits have held that the issue is not one of subject matter jurisdiction, because Congress expressly granted district courts jurisdiction over bankruptcy matters pursuant to 28 U.S.C. § 1334.  *See Justice Cometh, Ltd. v. Lambert*, 426 F.3d 1342, 1343 (11th Cir. 2005) ("Unquestionably, the district courts may 'provide that any or all cases under title 11 and any or all proceedings arising under title 11' be referred to the bankruptcy court for that district.  28 U.S.C. § 157(a).  However, the explicit § 1334 grant of original jurisdiction over Title 11 cases clearly forecloses a conclusion that the district court lacked subject matter jurisdiction over this case.") (citing *Price v. Rochford*, 947 F.2d 829, 832 n.1 (7th Cir. 1991)).

Regardless of whether *MSR Exploration* can be read to constrain this Court's jurisdiction, this District's local rules and other out-of-circuit authority establish that the proper course of action would be to refer this matter to the bankruptcy court.  *See* Northern District General Order No. 24 ("This court hereby refers to the bankruptcy judges of this district all cases under title 11, and all proceedings arising under title 11 or arising in or related to cases under title 11."); *Price v. Rochford*, 947 F.2d 829, 832 n.1 (7th Cir. 1991) (noting that while the district court had jurisdiction, the matter "should probably have been referred to the bankruptcy court under" the court's local rules).  The court has authority to grant permissive (or in some cases, mandatory) withdrawal of a reference to the bankruptcy court, but such withdrawal is typically more suited to cases in which federal questions have been presented that are distinct from bankruptcy issues.  *See* 28 U.S.C.A. § 157(d) (providing that the district court can withdraw a case "for cause shown," and must withdraw a case "if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce");

**United States District Court**

For the Northern District of California

1   *see also In re Tamalpais Bancorp*, 451 B.R. 6, 10 (N.D. Cal. 2011) ("In determining whether cause

2   exists, a district court should consider the efficient use of judicial resources, delay and costs to the

3   parties, uniformity of bankruptcy administration, the prevention of forum shopping, and other

4   related factors.") (citing *Sec. Farms v. Int'l Bhd. of Teamsters, Chauffers, Warehousemen &*

5   *Helpers*, 124 F.3d 999, 1008 (9th Cir.1997).

6           In this case, were the litigation to continue, the Court would refer the matter to the

7   bankruptcy court in line with this District's local rules.  However, because, as discussed below,

8   Plaintiffs lack standing to pursue this claim in any court, thus depriving this Court of Article III

9   jurisdiction, the Court proceeds to consider this issue.

10                          b.      Standing

11          Defendants argue that Plaintiffs lack standing to pursue any claims under § 362(k) for

12  violations of the automatic stay.  With respect to Plaintiffs Collectors and GTrust, Ninth Circuit

13  authority clearly forecloses them from asserting claims under § 362(k) because they are artificial

14  entities, rather than individuals.  In *In re Goodman*, the Ninth Circuit held that only "natural, or

15  individual, debtors" are eligible for relief under § 362(k), "not a corporation or other artificial

16  entity."  991 F.2d 613, 619-20 (9th Cir. 1993).  Because the plaintiff at issue in that case was a

17  corporate creditor, the Ninth Circuit held that he lacked standing.  Similarly, to the extent Plaintiffs

18  attempt to bring this claim on behalf of CLI as debtor, rather than as creditors, they would still lack

19  standing because CLI is a corporate entity and therefore could not assign an interest it does not

20  have.[7]  Defendants do not present any authority to the contrary.  Thus, the only Plaintiff potentially

21  eligible to assert a claim under § 362(k) is Plaintiff Fry, who is a prepetition creditor of CLI.

22          With respect to Plaintiff Fry, the Ninth Circuit has held that creditors lack standing to appeal

23  automatic stay claims abandoned by the trustee.  In *In re Pecan Groves of Arizona*, 951 F.2d 242,

24  245 (9th Cir. 1991), the court reasoned, "Allowing unsecured creditors to pursue claims the trustee

25

26          [7] Nor could Plaintiffs assert standing through any purported assigned interest of the trustee,
    because while the trustee has authority to enforce the automatic stay under other provisions of the
27  Code, the trustee has no private right of action for damages specifically under § 362(k).  *See In re
    Dyer*, 322 F.3d 1178, 1190 (9th Cir. 2003) ("Congress chose to exclude the Trustee from the reach
28  of § 362[(k)]. The Trustee therefore has no private right of action for damages resulting from
    automatic stay violations.").

**United States District Court**

For the Northern District of California

1    abandons could subvert the trustee's powers. . . . We therefore hold that a creditor has no

2    independent standing to appeal an adverse decision regarding a violation of the automatic stay."  In

3    light of *Pecan Groves*, a bankruptcy court has noted, "The Ninth Circuit has held that Section 362 is

4    for the benefit of the debtor or the trustee.  Thus, when the trustee fails to pursue enforcement of the

5    automatic stay, no other party, including creditors, may challenge conduct or acts which violate the

6    automatic stay."  *In re Soll*, 181 B.R. 433, 443 (Bankr. D. Ariz. 1995), citing *Pecan Groves*, 951

7    F.2d at 245.  *See In re Popp*, 323 B.R. 260, 267 (B.A.P. 9th Cir. 2005) ("[*Pecan Groves*] rules that

8    creditors have no standing to object to a violation of an automatic stay, because the automatic stay

9    'is intended solely to benefit the debtor estate.'").  As the Bankruptcy Trustee has not pursued a

10   claim for violation of the stay, *Pecan Groves* precludes Plaintiff Fry from prosecuting such a claim.

11           To be sure, a contrary view has been suggested in other Ninth Circuit cases.  In *Goodman*,

12   the Ninth Circuit commented – without citation to authority – that individual creditors, but not

13   corporate entities, could pursue claims under § 362.  991 F.2d at 618-19.  However, because the

14   plaintiff at issue in *Goodman* was a corporate creditor and therefore lacked standing, the Court's

15   statement was not part of or crucial to its holding.  *See id.* ("Normally pre-petition creditors in

16   Johnston's position shall recover damages under 11 U.S.C. §§ 362(h) [now 362(k)] and 1109(b) for

17   willful violations of the automatic stay.  Johnston, however, is a corporate entity.").  Another more

18   recent Ninth Circuit opinion repeated the statement from *Goodman*, but again outside the scope of

19   its holding.  *See In re Dawson*, 390 F.3d 1139, 1146 (9th Cir. 2004) ("[I]f a willful violation of the

20   automatic stay damages some portion of the bankruptcy estate, both the debtor and an individual

21   creditor of the now less-valuable estate may recover actual damages.") (making this statement in the

22   rule section of an opinion that discussed only a debtor's claim for violations of the automatic stay)

23   (citing *Goodman*, 991 F.2d at 618).  Neither *Goodman* nor *Dawson* cite to *Pecan Groves*.  Their

24   dicta is not binding.

25           Some bankruptcy courts have also reached a contrary result.  One court has attempted to

26   distinguished *Pecan Groves* on the basis that the *Pecan Groves* Trustee had abandoned the claim (as

27   opposed to simply not bringing a claim in the first place) and that *Pecan Groves* involved a Chapter

28   7 bankruptcy as opposed to Chapter 11.  *See In re Int'l Forex of California, Inc.*, 247 B.R. 284, 291

**United States District Court**
For the Northern District of California

1  (Bankr. S.D. Cal. 2000) ("[T]his Court reads *In re Pecan Groves* to stand only for what it held – that

2  where a chapter 7 trustee opts not to appeal an adverse ruling on an alleged stay violation,

3  intervening creditors may not do so. . . . [T]his Court finds that these Creditors have standing to

4  pursue the alleged stay violation under § 362(h)."). *See In re Lesick*, 03-00038, 2006 WL 2083655,

5  at *5 (Bankr. D.D.C. July 19, 2006) ("[Plaintiff] has standing to seek to obtain a declaratory

6  judgment that the defendants' actions taken in alleged violation of the automatic stay are void.").

7  The Court finds this authority unpersuasive.

8         This Court concludes *Pecan Groves* is controlling on the issue.  *Pecan Groves* contains

9  unequivocal language disapproving of creditors challenging automatic stay violations.  The only

10  difference between it and this case is that *Pecan Groves* concerned an appeal, rather than an initial

11  action.  However, such a distinction is largely irrelevant in light of the Ninth Circuit's rationale in

12  *Pecan Groves* that it would "subvert the trustee's powers" to "[a]llow[] unsecured creditors to

13  pursue claims the trustee abandons."  *Pecan Groves*, 951 F.2d at 245.  Indeed, the court's rationale

14  in explaining its ruling is broad, as it states,

15         In previous cases, we have reserved the question of whether a creditor
         can attack violations of the automatic stay.  *James v. Washington Mut.*
16       *Sav. Bank (In re Brooks)*, 871 F.2d 89, 90 n. 1 (9th Cir.1989);
         *Magnoni v. Globe Inv. and Loan Co. (In re Globe Inv. and Loan Co.)*,
17       867 F.2d 556, 559 (9th Cir.1989).  While there is no precedent on
         point in the Ninth Circuit, the majority of jurisdictions which have
18       considered standing under the automatic stay provision, 11 U.S.C. §
         362, have concluded that section 362 is intended solely to benefit the
19       debtor estate. *See In re Globe*, 867 F.2d at 559 & n. 6 (citing cases).
         Language from many cases indicates that, if the trustee does not seek
20       to enforce the protections of the automatic stay, no other party may
         challenge acts purportedly in violation of the automatic stay.
21       *Washington Mut. Sav. Bank v. James (In re Brooks)*, 79 B.R. 479, 481
         (Bankr. 9th Cir.1987), *aff'd on other grounds* 871 F.2d 89 (9th
22       Cir.1989); *Bryce v. Stivers (In re Stivers)*, 31 B.R. 735, 735
         (Bankr.N.D.Cal.1983); *Hadsell v. Philadelphia Life Ins. Co. (In re*
23       *Fuel Oil Supply and Terminaling, Inc.)*, 30 B.R. 360, 362
         (Bankr.N.D.Tex.1983).

24

25  *Id.*  Thus, the *Pecan Groves* court did not rest its holding on the fact that the case involved an

26  appeal.  In addition, unlike in *Forex*, which attempted to distinguish *Pecan Groves*, this is a Chapter

27  7 case just like in *Pecan Groves*.

28         Accordingly, the Court concludes that Plaintiffs lack standing to bring their § 362(k) claim.

United States District Court
For the Northern District of California

### IV.   CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant's motion to dismiss Plaintiffs' claim under § 362(k) claim for lack of subject matter jurisdiction.  Because the Court has dismissed Plaintiffs' only federal claim on jurisdictional grounds under 12(b)(1), it has no discretion to exercise supplemental jurisdiction over any of Plaintiffs' state law claims because "dismissal postulates that there was never a valid federal claim.  Exercise of jurisdiction . . . would therefore violate Article III of the Constitution . . ."  *Herman Family Revocable Trust v. Teddy Bear*, 254 F.3d 802, 806 (9th Cir. 2001) (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966)); *see also Skysign Int'l, Inc. v. City & County of Honolulu*, 276 F.3d 1109, 1118 n.7 (9th Cir. 2002) ("[H]ad Skysign lacked standing to bring its federal claim, the district court would have lacked subject matter jurisdiction over that claim and accordingly would have had no discretion to hear the state law claims.") (citing *Herman*); *Gherini v. Lagomarsino*, 258 F. App'x 81, 83-84 (9th Cir. 2007) (citing *Skysign* in the context of statutory standing) (unpublished).  Accordingly, the Court **DISMISSES** Plaintiffs' remaining claims under state law without prejudice.  The Clerk is directed to close the file.

This Order disposes of Docket Nos. 55, 59, 62, 64, 66, 73, 111.

IT IS SO ORDERED.

Dated:  August 7, 2012

_____
EDWARD M. CHEN
United States District Judge

14